UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER CATLETT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:16-cv-01641-TWP-DML ) |
| NANCY A. BERRYHILL,[1] Acting Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) |

### ENTRY ON JUDICIAL REVIEW

Plaintiff Christopher Catlett ("Catlett") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act.[2] For the following reasons, the Court **REMANDS** the decision of the Commissioner for further consideration.

### I.   BACKGROUND

**A.   Procedural History**

On February 26, 2013, Catlett protectively filed applications for DIB and SSI, alleging a disability onset date of January 6, 2012, due to multiple sclerosis, diabetes, high blood pressure, and congestive heart failure. His claims were initially denied on June 3, 2013, and again on

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Commissioner Carolyn W. Colvin as the defendant in this suit.

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

reconsideration on September 4, 2013. Catlett filed a written request for a hearing on November 6, 2013. On December 17, 2014, a hearing was held via video conference before Administrative Law Judge Elliott Bunce (the "ALJ"). Catlett was present and represented by counsel. A vocational expert, Bassey A. Duke, appeared and testified at the hearing. On January 6, 2015, the ALJ denied Catlett's applications for DIB and SSI. Following this decision, Catlett requested review by the Appeals Council on January 28, 2015. On June 3, 2016, the Appeals Council denied Catlett's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. On June 24, 2016, Catlett filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.** **Factual Background**

At the time of his alleged disability onset date, Catlett was forty-one years old, and he was forty-four years old at the time of the ALJ's decision. Catlett graduated from high school and attended two years of college. Prior to the onset of his alleged disability, Catlett had an employment history of working as a forklift driver, inventory clerk, stock clerk, and unloader. However, Catlett stopped working because of the pain and other symptoms associated with his impairments.

The Court focuses on Catlett's impairment of depression because this impairment is the primary focus of Catlett's request for reversal of the ALJ's decision and remand for further consideration. Using language from the ALJ's decision, the Court only summarizes Catlett's other impairments:

> [Catlett] has gone to the hospital for chest pain, and he eventually had a coronary stent placed. The claimant's brain MRIs show the presence of [multiple sclerosis], and he reports having numbness in the legs due to diabetes mellitus. He has had no mental health treatment other than medication management, but he was diagnosed with a mental health impairment during a consultative examination.

2

([Filing No. 13-2 at 28](#).)

In his medical records dating as early as June 2011, Catlett carried diagnoses of depression and anxiety ([Filing No. 13-8 at 110](#)). During a cardiology office visit in June 2011, it was noted that Catlett had an appropriate mood, memory, and judgment. *Id.* at 112.

Catlett received treatment from neurologist Kuimil K. Mohan, M.D. ("Dr. Mohan"), for back and other pain, and during an office visit in February 2012, Dr. Mohan recorded that Catlett had normal memory, normal attention span and concentration, normal fund of knowledge, and normal orientation to time, place, and person following a neurological evaluation. It was also noted that Catlett had no suicidal thoughts ([Filing No. 13-7 at 55](#)–56). Dr. Mohan made the same observations of Catlett in March 2012 ([Filing No. 13-18 at 15](#)).

During a cardiology office visit in February 2013, Joseph Lauer, M.D., noted Catlett's diagnoses of depression and anxiety and also noted that Catlett had appropriate mood, memory, and judgment ([Filing No. 13-8 at 79](#)–81). In March 2013, Catlett was seen by Dmitry Arbuck, M.D. ("Dr. Arbuck"). Dr. Arbuck made note of Catlett's anxiety and major depressive disorder and recommended that Catlett stop taking Cymbalta and start taking Viibryd to address his depression and anxiety ([Filing No. 13-12 at 18](#)–21).

In March 2013, on his "personal data form" at Meridian Health Group, Catlett rated his mental health as "good," with the other options being average, below average, or poor. He also reported that he had depression but no other psychological concerns. *Id.* at 2, 6. From a progress note of an office visit to Indiana Polyclinic in April 2013, it was noted that Catlett had a "blunted affect" and was taking his medication for depression and anxiety. *Id.* at 29. At a follow-up visit to Indiana Polyclinic in May 2013, Catlett reported that his depression and anxiety were a "9" on

a scale of 0 to 10 and that he was irritable and angry and experiencing hallucinations and side effects from his medications. *Id.* at 30.

After Catlett filed his applications for SSI and DIB, the state disability office asked Angela Hunnicutt, Ph.D. ("Dr. Hunnicutt"), to conduct a psychological evaluation of Catlett in May 2013. ([Filing No. 13-10 at 65](#).) Catlett reported being depressed since being diagnosed with multiple sclerosis but denied a history of depression before the diagnosis. He reported to Dr. Hunnicutt that he had never received therapy for his depression. He denied a history of anxiety. Catlett "described his energy level as intermittent," and explained that "he can watch an hour of TV before his mind wanders." *Id.*

Dr. Hunnicutt observed that Catlett had good eye contact and was appropriately groomed. Dr. Hunnicutt recorded that Catlett appeared to have average intelligence and was alert throughout the interview. He was cooperative and had organized thoughts, appropriate affect, and a "worried" mood. His memory was intact. *Id.* at 66–67.

Dr. Hunnicutt opined that Catlett was able to understand, carry out, and remember instructions, and that based on Catlett's report, "he might be expected to have difficulty being able to concentrate on and persist at tasks." *Id.* at 68. Dr. Hunnicutt also opined that, "[d]espite some irritability, worry, and depression, [Catlett] would likely be able to respond appropriately to supervision, coworkers, and work pressures in a routine work setting." *Id.*

In June 2013, Catlett was admitted to the hospital because of uncontrolled diabetes. It was noted that Catlett had no uncontrolled depressive symptoms, but Catlett indicated that he felt depressed. A psychiatry consult found his symptoms consistent with bipolar disorder, and it was recommended that Catlett start taking Zyprexa and continue taking Lamictal. ([Filing No. 13-11 at 24](#).)

4

Immediately after being released from the hospital, Catlett returned to Indiana Polyclinic and reported his depression and anxiety. Catlett's attention, concentration, memory, speech, eye contact, and thought processes were within normal limits. His mood, affect, and thought content were appropriate, and his insight and judgment were intact ([Filing No. 13-12 at 44](#)–48). In July 2013, Catlett again presented to Indiana Polyclinic because of his depression. It was noted that he was within normal limits for speech and thought processes and content. However, he was tearful, appeared depressed, and had minimal eye contact. Psychotherapy and continued medication were recommended. *Id.* at 64.

When Catlett visited Indiana Polyclinic in October 2013, it was observed that he was tearful and crying with a blunted affect. His assessment included severe depression with mood instability and violent behavior, and it was noted that Catlett had poor pain control. Catlett was encouraged to go to the hospital the following day. ([Filing No. 13-14 at 31](#).)

On October 10, 2013, Catlett was admitted to Community Hospital East for acute psychosis with complaints of uncontrolled pain. Catlett's wife reported that she was fearful because of his irrational behavior and anger. ([Filing No. 13-17 at 9](#)–10.) While at the hospital, Catlett was placed on a mood stabilizing medication, and his condition improved rapidly. When he was discharged from the hospital on October 15, 2013, his pain, depression, and anxiety were greatly improved. *Id.* at 10.

Catlett underwent a psychiatric evaluation in June 2014 prior to receiving a spinal cord stimulator implant to treat his chronic pain. It was determined that Catlett had no psychological barriers to receiving the nerve stimulator. ([Filing No. 13-16 at 27](#)–28.)

During the hearing before the ALJ, Catlett testified that he was not receiving any treatment for any mental health impairments other than taking medication. He testified that the only time he

was treated by a mental health specialist was when he had a reaction to medication in August or September 2013. ([Filing No. 13-2 at 49.](#))

## II. DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB or SSI only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the

fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the court reviews the ALJ's decision deferentially, the court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because

of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ first determined that Catlett met the insured status requirement of the Act through December 31, 2017. The ALJ then began the five-step sequential evaluation process. At step one, the ALJ found that Catlett had not engaged in substantial gainful activity since January 6, 2012, the alleged disability onset date. At step two, the ALJ found that Catlett had the following severe impairments: diabetes mellitus, multiple sclerosis, coronary artery disease, and depression. At step three, the ALJ concluded that Catlett does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Catlett had an RFC to perform sedentary work that does not require "more than simple, routine, repetitious tasks with one- or two-step instructions," and that "allows the use of an assistive device to stand or walk." ([Filing No. 13-2 at 30](#).)

At step four, the ALJ determined that Catlett was unable to perform his past relevant work as a forklift driver, inventory clerk, stock clerk, or unloader because the demands of this past relevant work exceeded his RFC. At step five, the ALJ determined that Catlett was not disabled

because there were jobs that existed in significant numbers in the national economy that he could perform, considering his age, education, work experience, and RFC. These jobs included ticket checker, eyeglass frame polisher, and small products assembler. Therefore, the ALJ denied Catlett's applications for SSI and DIB because he was found to be not disabled.

## IV. DISCUSSION

In his request for judicial review, Catlett argues that remand is appropriate because the ALJ failed to account for Catlett's moderate difficulties in concentration, persistence, and pace when determining an appropriate RFC and when questioning the vocational expert about available work based on the RFC. Catlett focuses his argument on the standards established in *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010).

Catlett first explains that an ALJ is required to determine the severity of a claimant's mental health impairments with respect to concentration, persistence, and pace. In *O'Connor-Spinner*, the Seventh Circuit directed that when an ALJ finds that a claimant has moderate difficulties maintaining concentration, persistence, or pace, such difficulties generally should be reflected in the ALJ's RFC determination and the hypothetical questioning of the vocational expert upon whose testimony the ALJ relies. *Id.* at 619–20. If a claimant has difficulties in maintaining concentration, persistence, or pace, the vocational expert should be alerted to these difficulties. The Seventh Circuit explained, "Our cases generally have required the ALJ to orient the VE to the totality of a claimant's limitations. Among the limitations the VE must consider are deficiencies of concentration, persistence and pace." *Id.* at 619. "In most cases, however, employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *Id.* at 620; *see also Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014) ("we have

9

repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace").

Catlett argues that the ALJ determined he had moderate difficulties maintaining concentration, persistence, or pace, but neither the ALJ's RFC assessment nor his corresponding hypothetical question to the vocational expert upon which the ALJ relied accounted for such moderate difficulties. Instead, in the RFC assessment, the ALJ determined that Catlett could perform "simple, routine, repetitious tasks with one- or two-step instructions." ([Filing No. 13-2 at 30](#).) Then the ALJ used this deficient RFC to pose hypothetical questions to the vocational expert who was not alerted to Catlett's moderate difficulties in maintaining concentration, persistence, and pace. Catlett asserts that this is a direct violation of *O'Connor-Spinner* and requires remand.

Catlett acknowledges that *O'Connor-Spinner* sets forth two exceptions to the general rule that an ALJ must orient the vocational expert to the totality of a claimant's limitations, including deficiencies in concentration, persistence, and pace. First, an ALJ is not always required to account for limitations in concentration, persistence, or pace in the hypothetical question when the record indicates that the vocational expert independently learned of the limitations through other testimony at the hearing or by an independent review of the medical records. *O'Connor-Spinner*, 627 F.3d at 619. Second, an ALJ does not have to explicitly use the "terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.*; *see also Wilson v. Colvin*, 2014 U.S. Dist. LEXIS 119714, at \*5 (S.D. Ind. Aug. 27, 2014) ("an ALJ need not explicitly use the terms 'concentration, persistence, or pace' from a hypothetical if it is implicit in the hypothetical that such a limitation exists"). Catlett then argues that neither

exception applies in this case. He asserts that "[t]here is no evidence that the vocational expert sub silento assumed that Mr. Catlett had moderate difficulties maintaining concentration, persistence, or pace or any similar limitation." ([Filing No. 15 at 7](#).) Additionally, "[t]here is nothing implicit in the hypothetical question upon which the ALJ relied that reflected moderate difficulties maintaining concentration, persistence, or pace." *Id.*

In responding to Catlett's argument, the Commissioner focuses on the medical records that support the ALJ's determinations and downplays Catlett's mental health impairments. The Commissioner explains that substantial evidence supports the ALJ's determination regarding Catlett's mental health impairments, pointing to treatment records, mental status examinations, state agency medical opinions, and Dr. Hunnicutt's opinion.

The Commissioner acknowledges that the ALJ determined Catlett experienced moderate difficulties in maintaining concentration, persistence, and pace, noting drowsiness from medications and complaints of difficulty focusing due to depression. However, the Commissioner argues that the ALJ sufficiently considered and accommodated Catlett's mental impairment both when posing the hypothetical question to the vocational expert and in the RFC determination. The Commissioner asserts that the ALJ sufficiently accounted for the limitation by restricting Catlett to work involving only simple, routine, and repetitious tasks with one- or two-step instructions.

The Commissioner argues that "*O'Connor-Spinner* does not condemn the use of the phrase 'simple repetitive tasks' in all contexts." ([Filing No. 16 at 8](#)–9.) An ALJ is not required to use a particular term or phrase but rather must use language that reflects all the limitations of the claimant. The Commissioner then asserts that the ALJ's use of the language "simple, routine, repetitious tasks with one- or two-step instructions" is sufficient to reflect Catlett's moderate difficulties in maintaining concentration, persistence, and pace.

11

This case falls squarely within the parameters of *O'Connor-Spinner*. The Commissioner provided no argument regarding either exception discussed in *O'Connor-Spinner*. There is no discussion of how the ALJ's decision could fall within one of the exceptions to the general rule that an ALJ must orient the vocational expert to the totality of a claimant's limitations, including deficiencies in concentration, persistence, and pace. The Commissioner failed to establish or even explain how the language "simple, routine, repetitious tasks with one- or two-step instructions" is sufficient to reflect Catlett's moderate difficulties in maintaining concentration, persistence, and pace.

The ALJ indisputably determined that Catlett had moderate difficulties in maintaining concentration, persistence, and pace. The ALJ then "accounted for" that limitation by restricting Catlett's RFC to "simple, routine, repetitious tasks with one- or two-step instructions." Without more, *O'Connor-Spinner* and numerous other Seventh Circuit cases clearly establish that this language is not enough to address a claimant's limitation of moderate difficulties in maintaining concentration, persistence, and pace. A review of the entire record, including the transcript of the hearing before the ALJ, reveals that the RFC determination was deficient and the hypothetical question presented to the vocational expert was insufficient to inform the vocational expert of Catlett's limitation of moderate difficulties in maintaining concentration, persistence, and pace.

There is nothing in the record to suggest that this case should fall within the exceptions noted in *O'Connor-Spinner*. During the hearing, there was no testimony offered regarding concentration, persistence, or pace. The ALJ asked the vocational expert if he had "review[ed] the record as it pertains to [Catlett's] vocational profile," to which the vocational expert responded "Yes." (Filing No. 13-2 at 59.) But there is no indication that the vocational expert reviewed Catlett's medical records, which contained statements relating to limitations in concentration,

persistence, and pace. The ALJ presented a hypothetical question to the vocational expert limited to sedentary work involving unskilled entry-level jobs. The vocational expert listed three occupations, and then the ALJ asked, "Would it be fair to say, Mr. Duke, that these jobs consisted of simple, routine, repetitious tasks with one- or two-step instructions?" to which the vocational expert responded "Yes." *Id.* at 60–61. There is nothing in the record that would allow an inference that the vocational expert knew about or considered Catlett's moderate difficulties in maintaining concentration, persistence, and pace when he offered his expert testimony on which the ALJ relied.

It appears that the ALJ failed to account for Catlett's moderate difficulties in concentration, persistence, and pace when crafting an appropriate RFC and when questioning the vocational expert in violation of *O'Connor-Spinner*. Therefore, remand is appropriate for further consideration following the guidance established in *O'Connor-Spinner*.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 5/18/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

J. Frank Hanley, II
jfrankhanley@jfrankhanley.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov